## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

JOHN MYHRE, Individually and On Behalf          )
of All Others Similarly Situated,               )
                                                )
                        Plaintiff,              )    Case No. _____
                                                )
            v.                                  )    JURY TRIAL DEMANDED
                                                )
AMTRUST FINANCIAL SERVICES, INC.,               )    CLASS ACTION
DONALD T. DECARLO, SUSAN C. FISCH,              )
ABRAHAM GULKOWITZ, GEORGE                       )
KARFUNKEL, LEAH KARFUNKEL,                      )
RAUL RIVERA, MARK SEROCK, and                   )
BARRY ZYSKIND,                                  )
                                                )
                        Defendants.             )

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on March 1, 2018 (the "Proposed Transaction"), pursuant to which AmTrust Financial Services, Inc. ("AmTrust" or the "Company") will be acquired by Evergreen Parent, L.P. ("Parent"), an entity formed by private equity funds managed by Stone Point Capital LLC ("Stone Point"), together with Barry Zyskind ("Zyskind"), Chairman and Chief Executive Officer ("CEO") of AmTrust, George Karfunkel ("G. Karfunkel"), and Leah Karfunkel ("L. Karfunkel"), in which Parent will acquire the approximately 45% of the Company's issued and outstanding common shares that the Karfunkel-Zyskind family and certain of its affiliates and related parties do not presently own or control.

2.      On March 1, 2018, AmTrust's Board of Directors (the "Board" or "Individual

Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Evergreen Merger Sub, Inc. ("Merger Sub"). Pursuant to the terms of the Merger Agreement, shareholders of AmTrust will receive $13.50 per share in cash.

3.      On April 9, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

<u>JURISDICTION AND VENUE</u>

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

<u>PARTIES</u>

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of AmTrust common stock.

9.      Defendant AmTrust is a Delaware corporation and maintains its principal exective office at 59 Maiden Lane, 43rd Floor, New York, New York 10038.  AmTrust's common stock is traded on the NasdaqGS under the ticker symbol "AFSI."

10.     Defendant Donald T. DeCarlo ("DeCarlo") has served as a director of AmTrust since 2006.

11.     Defendant Susan C. Fisch ("Fisch") has served as a director of AmTrust since 2010.

12.     Defendant Abraham Gulkowitz ("Gulkowitz") has served as a director of AmTrust since 2006.

13.     Defendant G. Karfunkel has served as a director of AmTrust since 1998.

14.     Defendant L. Karfunkel has served as a director of AmTrust since 2016.

15.     Defendant Raul Rivera ("Rivera") has served as a director of AmTrust since 2016.

16.     Defendant Mark Serock ("Serock") has served as a director of AmTrust since March 2018.

17.     Defendant Zyskind has served as a director of AmTrust since 1998. Zyskind has served as CEO and President of AmTrust since 2000 and became Chairman of the Board in May 2016.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

**CLASS ACTION ALLEGATIONS**

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of AmTrust (the "Class").  Excluded from the Class are defendants herein

and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.    This action is properly maintainable as a class action.

21.    The Class is so numerous that joinder of all members is impracticable.  As of March 1, 2018, there were approximately 196,091,789 shares of AmTrust common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.    Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on

behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

26.     AmTrust is a multinational insurance holding company headquartered in New York.

27.     The Company offers specialty property and casualty insurance products, including workers' compensation, commercial automobile, general liability, and extended service and warranty coverage through its primary insurance subsidiaries rated "A" (Excellent) by A.M. Best.

28.     AmTrust is included in the Fortune 500 list of largest companies.

29.     On March 1, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement.

30.     Pursuant to the terms of the Merger Agreement, AmTrust will be acquired by Parent, an entity formed by private equity funds managed by Stone Point, together with Individual Defendants Zyskind, G. Karfunkel, and L. Karfunkel.  Parent will acquire the approximately 45% of the Company's issued and outstanding common shares that the Karfunkel-Zyskind family and certain of its affiliates and related parties do not presently own or control, and the public shareholders of AmTrust will receive $13.50 per share in cash.

31.     According to the press release announcing the Proposed Transaction:

> AmTrust Financial Services, Inc. (Nasdaq:AFSI) ("AmTrust" or the "Company") announced today that it has entered into a definitive agreement with Evergreen Parent, L.P., an entity formed by private equity funds managed by Stone Point Capital LLC ("Stone Point"), together with Barry D. Zyskind, Chairman and CEO of AmTrust, George Karfunkel and Leah Karfunkel (collectively, the "Karfunkel-Zyskind Family"), in which Evergreen Parent will acquire the approximately 45% of the Company's issued and outstanding common shares that the Karfunkel-Zyskind Family and certain of its affiliates and related parties do not presently

own or control.  The transaction values the fully diluted equity of the Company at approximately $2.7 billion, excluding the Company's outstanding preferred stock.

Under the terms of the proposed merger, AmTrust common shareholders who are not affiliated with the Karfunkel-Zyskind Family (the "Public Shareholders") will receive $13.50 in cash for each share of AmTrust common stock they hold.  This represents a premium of 33% to the Company's unaffected closing common stock price on January 9, 2018, the last trading day before Stone Point and the Karfunkel-Zyskind Family announced their proposal to acquire all of the outstanding common shares of AmTrust that the Karfunkel-Zyskind Family did not already own or control.  The Karfunkel-Zyskind Family and certain of its affiliates and related parties will rollover their shares in the Company for interests in Evergreen Parent.  Each share of the Company's currently outstanding preferred stock will remain outstanding and it is expected that they will continue to be listed on the New York Stock Exchange following the consummation of the transaction.

The proposed merger is anticipated to close in the second half of 2018, subject to satisfaction or waiver of the closing conditions, including approval by regulatory authorities and the Company's shareholders, including approval by a majority of the shares of the Company not owned or controlled by the Karfunkel-Zyskind Family, their children, senior management or their respective affiliates and certain related parties. The Company will file a Current Report on Form 8-K with the Securities and Exchange Commission which will more fully describe the terms and conditions of the proposed merger.

AmTrust's Board of Directors has unanimously approved the proposed merger based upon the unanimous recommendation of a Special Committee of the Board of Directors, which was composed of independent directors not affiliated with the Karfunkel-Zyskind Family and advised by its own financial and legal advisors. The Special Committee and the Board each recommend that the Company's Public Shareholders approve the merger and adopt the merger agreement.

**The Proxy Statement Omits Material Information, Rendering it False and Misleading**

32.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

33.    The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

34.    First, the Proxy Statement omits material information regarding potential conflicts of interest of the financial advisor to the special committee of the Board (the "Special

Committee"), Deutsche Bank Securities, Inc. ("Deutsche Bank"), as well as the Company's

financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch").

35.    The Proxy Statement provides that:

> One or more members of the DB [Deutsche Bank] Group have, from time to time,
> provided investment banking, commercial banking (including extension of credit)
> and other financial services to Stone Point, affiliates of which are equity holders
> of Parent, and its affiliates and portfolio companies for which they have received,
> and in the future may receive, compensation, including acting as sole bookrunner
> on a $22 million follow-on offering of shares for Eagle Point Credit Company,
> Inc., a portfolio company of Stone Point, in May 2016.  One or more members of
> the DB Group have, from time to time, provided commercial banking (including
> extension of credit) and other financial services to the Company and its affiliates
> for which they have received, and in the future may receive, compensation,
> including serving as a counterparty to a Dutch trade finance facility of National
> Borge, a subsidiary of the Company, and certain affiliates in December 2017.

However, the Proxy Statement fails to disclose the amount of compensation received by

Deutsche Bank and its affiliates for providing such services.

36.    The Proxy Statement fails to disclose the timing and nature of the discussions

BofA Merrill Lynch's affiliate had with the Karfunkel-Zyskind family about providing debt

financing in connection with the Proposed Transaction, as well as the basis for the parties

determining not to proceed with such discussions.

37.    The Proxy Statement further fails to disclose:  (i) the nature of the participation in

coverage activities regarding BofA Merrill Lynch's relationship with Stone Point and affiliates

and investees of the Karfunkel-Zyskind family by the senior member of the BofA Merrill Lynch

deal team advising AmTrust in connection with the Proposed Transaction (the "BofA Merrill

Lynch Representative"); (ii) the nature of the BofA Merrill Lynch Representative's ongoing

relationship with Stone Point and its senior principals over many years; and (iii) whether the

Individual Defendants evaluated potential conflicts of interest in connection with the

aforementioned facts as well as the fact that the BofA Merrill Lynch Representative's spouse

serves as a principal of Stone Point.

38.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

40.     Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications, including the communications relating to Zyskind's future role as CEO and President of the surviving corporation.

41.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.     Third, the Proxy Statement omits material information regarding AmTrust's financial projections.

43.     While the Proxy Statement discloses the Special Committee Case Projections, the Case 1 Projections, the Case 2 Projections, and the Downside Case Projections, the Proxy Statement fails to disclose the Budget Projections.

44.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial

advisor in support of its fairness opinion.

45.    Fourth, the Proxy Statement omits material information regarding the process leading up to the Merger Agreement.  AmTrust's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

46.    For example, the Proxy Statement fails to disclose the nature of the discussions that took place between the Company and strategic and financial sponsor parties in November and December 2017 regarding a potential going-private transaction, including the number of parties with whom such discussion occurred, how many of such parties entered into confidentiality agreements (and the terms of such agreements), and the terms of any expressions of interest in potential transactions.

47.    Similarly, the Proxy Statement fails to disclose the nature of the "inquiries from other financial sponsor parties regarding a potential going-private."

48.    The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) Background of the Merger; (ii) Reasons for the Merger; Recommendation of the Special Committee; Recommendation of the Board of Directors; Fairness of the Merger; (iii) Opinion of Deutsche Bank; (iv) BofA Merrill Lynch; (v) Projected Financial Information; and (vi) Interests of Certain of the Company's Directors and Executive Officers in the Merger.

49.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to AmTrust's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and AmTrust**

50.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.    The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  AmTrust is liable as the issuer of these statements.

52.    The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53.    The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54.    The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55.    The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57.    Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants**

58.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59.    The Individual Defendants acted as controlling persons of AmTrust within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of AmTrust and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

62.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

63.    As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.    Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  May 9, 2018                    **RIGRODSKY & LONG, P.A.**

                                    By:   */s/ Timothy J. MacFall*
                                          Timothy J. MacFall
                                          825 East Gate Boulevard, Suite 300
                                          Garden City, NY 11530
                                          (516) 683-3516

                                          Gina M. Serra
                                          300 Delaware Avenue, Suite 1220
                                          Wilmington, DE 19801
                                          (302) 295-5310

                                          *Attorneys for Plaintiff*